# IN THE OREGON TAX COURT

STEVENS et al
*v.*
DEPARTMENT OF REVENUE
(TC 1308)

Milton R. Stewart, Portland, represented plaintiffs.

Alfred B. Thomas, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered March 10, 1982.

**CARLISLE B. ROBERTS, Judge.**

The plaintiffs appealed from the defendant's Order Nos. VL 78-766, 78-768, 78-770, 78-771, 78-772, dated December 28, 1978, and Order Nos. 78-767 and 78-769, dated January 18, 1979. The sole issue is the January 1, 1978, true cash value of nine tax lots, consisting of two one-acre homesites and approximately 96.67 acres of undeveloped land.

River frontage and Bonneville Power Administration

easement acres, Map No. 2 3E 25, Tax Lots 1300, 1400, 2101, 2400, 2500 and part of Tax Lot 2300, have been valued by the department at $500 per acre. Map No. 2 4E 30, Tax Lot 491, a narrow .59-acre strip, which the court finds was subject to the easement, was valued at $2,000 per acre. The remaining 6.16 acres of land were valued at $1,200 per acre and two one-acre homesites were valued at $11,000 each.

The Department of Revenue orders sustained the Clackamas County Board of Equalization determinations, finding a true cash value of $75,560 for all of the lots. Plaintiffs contended before the department and before this court that the true cash value of the property under appeal was no higher than $31,595.

The subject property is located 16 miles east of Oregon City and five miles north of Estacada, off Highway 224, and is part of a total ownership of 211 contiguous acres. The area is zoned "Transitional Timber 20," which is highly restrictive but permits subdivision of the property into 20-acre parcels upon a showing that the property will be managed for timber.

Mrs. Hazel M. Stevens, testifying on her own behalf, gave physical descriptions of the nine tax lots under appeal. (These are shown on Plaintiffs' Exhibit 1 as individual tax lots but, other than the two one-acre homesites, the property has not been platted and there was no evidence presented to indicate that the property was purchased according to tax lots.)

The disputed tax lots are oddly shaped. Many have no separate road access and would be landlocked if surrounding parcels were not commonly owned.

Tax Lot 2101 consists of 61.25 acres of low-lying, brush-and-tree-covered river frontage. It is entirely within the floodplain of the Clackamas River. The old river channel establishes the land side boundary of this parcel. Mrs. Stevens testified that a 75- to 125-foot drop along the old embankment makes access to the lot difficult. It is currently accessible by water or footpath only. The acreage is subject to the Scenic Waterways Act and its use is severely limited.

Another 28.67 acres are subject to a Bonneville Power

Administration easement and have heavy, high-voltage power lines running over them.

According to the plaintiffs, the land under the BPA easement is of limited use. Mrs. Stevens described various unpleasant phenomena associated with the power lines. Plaintiffs hear constant humming and roaring. One of the cables always glows with electrical current. Minor shocks and "body fuzz" are frequently experienced while standing beneath the lines. The plaintiffs have discovered that within a certain proximity of the lines, metal is corroded, car batteries are drained and fluorescent bulbs are set aglow. Mrs. Stevens witnessed an explosion and fire which she believed was caused by an arc passing from a high voltage line to a nearby tree. She also testified that the excavation required for installation of the BPA towers left the soil beneath the lines extremely rocky and not suitable for growing crops. The land is used for light grazing of cattle.

Tax Lot 491 is a long, narrow, brush-covered strip of .59 acre which juts out from the subject property and was originally purchased by plaintiffs as access. Goose Creek separates this lot from the remainder of the property. In order to use the land as access, it would be necessary to construct a road and a bridge over the creek. Additionally, the lot is almost entirely covered by BPA lines.

Mr. C. C. Dawell, a licensed real estate appraiser, testified as an expert witness on behalf of the plaintiffs. Based upon a physical examination of the property and a study of several recent sales of comparable properties, he concluded that the value of the land under appeal was approximately half of that assigned to it by the department. He estimated the value of the frontage property to be $250 per acre. The BPA easement property was valued at $250 and $300 per acre. The two homesites were valued at $3,000 each, and the remainder of the property at $250 per acre.

Mr. Ray R. Hamersley, certified appraiser for the Clackamas County Assessor's Office, appeared on behalf of the defendant. He also had made a thorough examination of the subject property and a study of comparable sales. He concluded that it had a value which would support an assessment in excess of that under appeal.

■ The different conclusions reached by each party's expert are partially attributable to the appraisal methods selected by them. As stated above, the subject property is part of an entire ownership of 211 acres. Both experts indicated that, in light of its zoning as "Transitional Timber 20," the highest and best use of the property is its current use, as one parcel. Yet, for the purposes of appraisal, Mr. Dawell considered each tax lot as a separate valuation unit. Mr. Hammersley valued each lot, including the homesites, as a component part of the entire Stevens' ownership.

It is true that, taken individually, many of these lots are landlocked, without access to roads except over neighboring parcels. Additionally, many of the lots are irregularly shaped, extremely narrow and of little use by themselves. Mr. Dawell was of the opinion that these characteristics should be accounted for and he discounted the value of the lots accordingly.

Because the property is a single unit, extreme adjustments for access, size and shape are unrealistic. An appraiser should determine the value of the property as of the assessment date in a manner which will recognize the highest and best use of that property, without regard to arbitrary tax lot divisions. *Sabin v. Dept. of Rev.*, 270 Or 422, 425-426, 528 P2d 69 (1974). If the subject property were to be divided into smaller parcels and sold, the new parcels would undoubtedly be of a sufficient size, shape and access to be of use to the purchasing party.[1] For these reasons, Mr. Hamersley's valuation of each tax lot as a part of one contiguous ownership is more realistic.

The second area of disagreement involved the effect of the Bonneville Power Administration lines upon the value of the property. Mr. Dawell was of the opinion that the presence of the lines rendered much of the property undesirable for any ordinary use other than light grazing by cattle or horses. Mr. Hammersley made a study of sales of land subject to BPA easements and concluded that the presence of the lines was not a significant negative influence on the value of the property. The court is convinced that if a purchaser were

---

[1] It is worth noting that current zoning permits parcels no smaller than 20 acres and requires at least 20 feet of county road frontage per parcel.

aware of the unpleasant phenomena described by Mrs. Stevens, his or her decision to purchase would be influenced by the presence of the lines.

■ Mr. Dawell has high qualifications as an expert. However, due to his decision to regard each tax lot as a separate entity for the purpose of appraisal, his conclusions of value are not convincing. Additionally, Mr. Dawell admitted that his opinion of value was purely subjective, based upon a "gut" feeling. He stated that he studied comparable sales; however, there is no correlation between the values indicated by those sales and his conclusions of value. Mr. Dawell did not apply specific adjustments to comparables and stated that such a technique would be fruitless in light of the innumerable adjustments that would be required, due to variations in time, size, shape and access. Instead, he relied upon his years of experience as a real property appraiser and his own intuition.

Although expert intuition plays a definite role in the appraisal process, the appraiser must also be able to give a satisfactory explanation of how he or she arrived at an opinion of value. *Riensche v. Dept. of Rev.,* 8 OTR 304, 322 (1980). Mr. Dawell has not done so. For example, plaintiffs have challenged the values assigned by the county assessor to each of the one-acre homesites as being inconsistent with the highest and best use of the parcels. Yet, Mr. Dawell could not support with tangible market data the alternate valuation which plaintiffs proposed.

The defendant's expert witness offered in support of his conclusion of value an excellent appraisal report, based upon five allegedly comparable sales. Specific adjustments were made for size and time, and Mr. Hamersley stated that in reaching his ultimate conclusion of value, he also considered the presence of the BPA lines.[2]

Mr. Hamersley's opinion of value is persuasive. The court finds that, as to Map No. 2 3E 25, Tax Lots 1300, 1400, 1580, 1590, 2101, 2300, 2400 and 2500, the true cash value as of January 1, 1978, was at least the amount determined by the

---

[2] In spite of Mr. Hamersley's opinion that the presence of the lines did not significantly affect the market value of the property, he valued property subject to the BPA easement at $600 per acre less than property not subject to the easement.

county assessor. The defendant's Order Nos. VL 78-766, 78-768, 78-769, 78-770, 78-771 and 78-772 are affirmed.

As to Map No. 2 4E 30, Tax Lot 491, the court is persuaded that the county assessor's valuation of $2,000 per acre is too high. This lot is a long, narrow parcel, physically separated from the remainder of the property by Goose Creek. The testimony indicates that it is burdened with power lines. Mr. Hamersley's appraisal indicates a value of $590. For reasons stated above, the court finds that this value is supported by a preponderance of the evidence.

Accordingly, defendant's Order No. VL 78-767 is set aside. The court finds that the true cash value as to Map No. 2 4E 30, Tax Lot 491, was $590 as of January 1, 1978.

The Assessor and Tax Collector for Clackamas County shall amend the assessment and tax rolls for the 1978-1979 tax year as required by this opinion. If the plaintiffs have overpaid the tax as determined, they shall be refunded any excess payment with interest thereon, pursuant to ORS 311.806 and 311.812.

No costs to either party.