Holly A. WHITE,
Virgil F. Manke, Joan M. Manke,
James Manke, and Bonnie Manke,
*Plaintiffs,*

*v.*

WASHINGTON COUNTY ASSESSOR,
*Defendant.*

(TC-MD 010207C)

Oral argument was held October 23, 2001, in the court-room of the Oregon Tax Court, Salem.

David Griggs, Ramis Crew Corrigan & Bachrach, Salem, argued the cause for Plaintiffs, with him on brief was John R. McCulloch, Jr.

Elmer Dickens, Washington County Assistant County Counsel, Hillsboro, argued the cause for Defendant.

Order for neither party rendered December 12, 2001.

### DAN ROBINSON, Magistrate.

Plaintiffs have appealed the value of three large tracts of land that collectively total approximately 325 acres. Although the main issue in the case is the value of the property as of January 1, 2000, the parties disagreed as to the legal requirements governing the methodology to be employed in estimating the value. Accordingly, the appeal was bifurcated to address separately the lawful method of valuation for property tax assessment and the question of market value. A hearing was held on October 23, 2001, to hear oral argument on the legal issue. Plaintiffs were represented by David Griggs, Attorney at Law. Arguing the cause for Defendant was Elmer Dickens, Washington County Assistant County Counsel. Memorandums of Law were submitted by the parties prior to the hearing.

## I. STATEMENT OF FACTS

The property at issue consists of three tax lots identified by five separate tax accounts. "Tax lot 600 consists of 119 acres, tax lot 300 consists of 102.39 acres, and tax lot 301 consists of 101.26 acres."[1] On the applicable assessment date the property had been granted preliminary plat approval for the development of the three tax lots into a 66-unit rural planned subdivision. That approval came in 1996.

Plaintiffs argue that under the Oregon Constitution the only permissible method of valuing the three roughly 100-acre parcels of land here at issue is on a stand-alone basis without regard to Plaintiffs' ownership of the two adjoining lots that, as a group, comprise the 325-acre parcel.

---

[1] Those figures conflict slightly with the statement of facts appearing on page 2 of Plaintiffs' legal memorandum, filed September 7, 2001. Those figures are 119 acres for tax lots 300 and 600 and 110 acres for tax lot 301. The difference is unimportant at this stage of the case.

Plaintiffs' methodology would apparently ignore completely the fact that Plaintiffs obtained preliminary approval for a 66-unit rural planned subdivision. Plaintiffs argue that Defendant's method of appraisal views the three tax lots as a single unit, which is contrary to the decision of the Oregon Supreme Court in *First Interstate Bank v. Dept. of Rev.*, 306 Or 450, 760 P2d 880 (1988). Plaintiffs place considerable reliance upon *Neupert v. Dept. of Rev.*, 13 OTR 407 (1995), for the proposition that for tax purposes property must be valued by tax lot without regard to ownership of contiguous parcels.

Defendant first noted during oral argument that the individual lots were not "appraised" separately, but that the tax lots were "assessed" separately. That appraisal, however, is not yet in evidence. On the legal question before the court, Defendant argues that Oregon law requires that property be valued at real market value and that highest and best use is an integral part of that process. Defendant next contends that highest and best use "is as part of a rural planned 66-unit subdivision." To emphasize the point, Defendant notes that Plaintiffs spent several years litigating "to obtain the right to develop the subdivision and * * * nearly two million dollars." Citing *Sabin v. Dept. of Rev.*, 270 Or 422, 528 P2d 69 (1974) and *Ward v. Dept. of Rev.*, 293 Or 506, 650 P2d 923 (1982), Defendant argues that "[a] hypothetical subdivision of land is permissible in order to effectuate the highest and best use of property" and that zoning and topography would not have allowed for the development of 66 lots absent Plaintiffs' efforts in obtaining the subdivision approval. Next, Defendant concedes that the court in *First Interstate* ruled that "[t]he value of each lot by itself, not as a portion of a larger piece of property, must be assessed." 306 Or at 453. However, Defendant directs the court to a footnote in that case which reads:

> "[i]t is possible that in certain situations, the highest and best use of a lot would be a part of a group of lots. If that were the case, it would be appropriate to assess that lot based on its value as part of a group."

*Id.* n 2. Defendant concludes its argument by asserting that "[t]he County has valued the three lots as being zoned to

allow the level of density necessary to support a 66-unit subdivision, based upon the preliminary plat approval and the extensive development by plaintiff of that subdivision."

## II. ANALYSIS

Both statute and case law require that the value of each tax lot be separately assessed. ORS 308.205; ORS 308.215; ORS 308.232; ORS 308.240; ORS 308.245;[2] *Id.* at 453 (holding that statutory reference to property and parcel are synonymous with tax lot); *Neupert,* 13 OTR at 411. The "value" to be determined is real market value. ORS 308.205(1); ORS 308.215(1)(e). And, as Plaintiffs point out, "the assessor must establish a separate real market value for each parcel on a stand-alone basis." *Neupert,* 13 OTR at 411. A fundamental consideration in determining market value is highest and best use. The determination of highest and best use, in turn, is based on market forces. The " 'analysis identifies the most profitable, competitive use to which the property can be put.' " *Fred Meyer, Inc. v. Dept. of Rev.*, 12 OTR 85, 87 (1991), *quoting* Appraisal Institute, *The Appraisal of Real Estate* 269 (9th ed 1987). In addition, due consideration must be given to "applicable land use plans, including current zoning and other governmental land use restrictions." ORS 308.235(1)(a). Plat approval clearly falls within this category.

With those principles in mind, it becomes evident that to the extent the approval for the rural planned subdivision has an impact on the market value of the three individual tax lots at issue, such approval must be considered in valuing the property for assessment purposes. As Defendant points out, Plaintiffs spent considerable time and money obtaining subdivision approval and without such approval each of the three tax lots would support considerably fewer homesites than allowed under the subdivision plat.

The rule set forth in *First Interstate,* that "[t]he value of each lot by itself, not as a portion of a larger piece of property, must be assessed," does not preclude an appraiser from considering the impact of a preliminary plat approval on the market value of the property to be assessed. 306 Or at 453.

---

[2] All references to the Oregon Revised Statutes (ORS) are to 1999.

Neither does such an approach require the appraiser to consider common ownership of parcels. The rationale behind separate assessments is that value should not be higher or lower because a taxpayer owns one or more adjoining lots. It is the use of the land, not its ownership, which drives value. The value reached by the appraisers in this case must reflect the highest and best use of the property, including the development potential of the land as evidenced by the plat approval.

■    Considering the development potential of property was specifically approved by the Oregon Supreme Court in *Sabin v. Dept. of Rev.,* where the court upheld the valuation of property based on a hypothetical division of property contrary to existing use because the evidence indicated that "such division is required to effectuate the highest and best use of the property." 270 Or at 425-26. Although approval for development of the subject property as a 66-unit rural planned subdivision may be attributable to Plaintiffs' common ownership of the larger 325-acre "parcel," it is the land's development potential, not its common ownership, that impacts the value. The outcome of that approval impacts each 100-acre tax lot individually, as each of the three tax lots have been approved for residential development. The lots have been approved for between 17 and 28 homesites each. At least 7 of the 66 homesites effectuated by the plat approval straddle two of Plaintiffs' 100-acre tax lots. Plaintiffs' ownership of the entire 300-plus acres made possible the scope of the planned development. Moreover, the development potential of each of the three tax lots here at issue is more certain than was true in *Sabin,* because here Plaintiffs have preliminary plat approval and have invested significant amounts of money in preparing the property for the 66-unit rural planned subdivision. Costs as of January 1, 1999, were roughly $1.7 million. More money was spent in 1999, leading up to the January 1, 2000, assessment date.

■    If in valuing each of the three lots individually the plat approval cannot be recognized, and if, in order to effectuate highest and best use, the land must be viewed as a whole, then the court orders that the lots be considered as a group (the 325 acres) and due recognition given to the plat approval. The court here relies on the footnote in *First*

*Interstate* and *Stevens v. Dept. of Rev.*, 9 OTR 141, 144 (1982). The court in *Stevens* ruled:

> "[a]n appraiser should determine the value of the property as of the assessment date in a manner which will recognize the highest and best use of that property, without regard to arbitrary tax lot divisions."

*Id.* (citation omitted).

The court is mindful that *Neupert* disapproved *Stevens* and the fact that the footnote in *First Interstate* is *dicta*. However, that footnote in *First Interstate* was restated by the Supreme Court three years later in *Mathias v. Dept. of Rev.*, 312 Or 50, 55, 817 P2d 272 (1991), which tends to elevate its status, though it remains *dicta*. Moreover, grouping the lots was not necessary to effectuate highest and best use in *Neupert* because the value could be fairly determined without resort to that approach.[3] Here viewing the lots as an economic unit may be necessary to effectuate highest and best use. If so, the appraisers shall proceed accordingly.

This ruling is consistent with how Plaintiffs have treated the property. Moreover, valuing the three lots as an economic unit would not violate the constitutional requirement of uniformity because the parcel, as a whole, would be valued as other subdivisions, with an adjustment for the additional costs necessary to complete the development.

## III.   CONCLUSION

IT IS ORDERED that the method for valuation of Plaintiffs' property must be in accordance with the court's ruling as set forth above.

---

[3] Were the court in *Neupert* to have followed *Stevens*, the outcome would likely have been the same in terms of value because the additional strip of land at issue there would be excess land and, under the theory of contribution, would have added little to the value of the commonly owned adjacent homesite.