IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

FRANK H. SPEARS, RUTH G. SPEARS, )
CATLIN SPEARS LIND, JULIANNE )
SPEARS (aka JULIANNE S. RYAN), )
FRANCA DYER, SCOTT A. MCLEOD, and )
CARLTON MCLEOD, )
                                )
          Plaintiffs, )    TC-MD 110383N
                                )
      v. )
                                )
MARION COUNTY ASSESSOR, )
                                )
          Defendant. )    **DECISION**

Plaintiffs appealed the 2010-11 real market value of property identified as Account

R82426 (subject property). A trial was held on January 26, 2012, in the Tax Courtroom, Salem,

Oregon. Cynthia Fraser, Attorney at Law, appeared on behalf of Plaintiffs. Testifying on behalf

of Plaintiffs were: Plaintiff CJ McLeod (McLeod); Lindsey Martin (Martin), financial advisor for

Sperry Van Ness; Spencer Powell (Powell), state certified appraiser and MAI; and Daniel Harms

(Harms), appraiser assistant with Powell Valuation. Scott Norris, Assistant County Counsel,

appeared on behalf of Defendant. Tom Rohlfing (Rohlfing), Senior Commercial Appraiser,

testified on behalf of Defendant. Plaintiffs' Exhibits 1, 2, 3, 4, 6, 8, 9, 11, 12, 13, and 14 and

Defendant's Exhibit A were offered admitted without objection.

## I.     STATEMENT OF FACTS

The 2010-11 roll real market value of the subject property was $2,124,820. (Ptfs' Compl,

at Ex 1.) The board of property tax appeals (BOPTA) reduced the 2010-11 real market value to

$1,881,350. (*Id.* at Ex 2.) The 2010-11 maximum assessed and assessed values of the subject

property are $1,624,240. (*Id.*) Plaintiffs request a 2010-11 real market value of $912,000, but no

more than $1,235,000. (*Id.* at 2.) Defendant's appraiser, Rohlfing, concluded a 2010-11 real market value of $1,627,000.[1]

The subject property is 10.16 acres, or 442,570 square feet, of land in the Industrial Park (IP) zone.[2] (Ptfs' Ex 1 at 1, 20.) The subject property is located on Kettle Court SE in Salem, Oregon. Nearby properties include the Wachovia call center, the Kettle Chip Warehouse, the former "transOcean" building, and other retail and office properties, as well as some hotels and motels. (*Id.* at 18, 21; Def's Ex A at 5.) Both Powell and Rohlfing agree that the subject property has "excellent" access to I-5. (Def's Ex A at 6.)

McLeod testified that the subject property was previously part of his grandfather's farm and it has been in the family for over 100 years. He testified that, 25 years ago, the family farm was 125 acres. (*See* Ptfs' Ex 6.) McLeod testified that the farm has been sold off in pieces, with about 10 sales since the 1980s. He testified that a parcel bordering the subject property was sold to Kettle Foods and another was sold to Wachovia bank. McLeod testified that the subject property is vacant and currently planted with Christmas trees.

A.      *Encumbrances*

The parties agree that the subject property is "encumbered by wetlands and [an] access easement" and both assign value only to the "usable," or developable, portion of the subject property. (Ptfs' Ex 1 at 5, 20, 26; Def's Ex A at 4.) Neither party presented evidence of a wetlands delineation for the subject property; it appears that a delineation has not been completed. Powell testified that he relied, in part, on the Salem/Keizer Local Wetland Inventory Map to determine the size of the wetlands on the subject property. (*See* Ptfs' Ex 1 at 24.) Harms

---

[1] Defendant's appraisal report states the real market value conclusion as $1,671,000, but Rohlfing revised that figure at trial. (Def's Ex A at 1.)

[2] Rohlfing reported the subject property to be 10.16 acres and 442,670 square feet. (Def's Ex A at 3.)

testified that he assisted with the appraisal of the subject property and that he determined the area of the wetlands to be 50,176 square feet based on a map of the subject property and the "GIS polygon measuring tool." (*See* Ptfs' Ex 1 at 26; Ex 13 at 1.) Rohlfing testified that he revised his original determination of the size of the subject property wetlands based on a second visit to the subject property and concluded the wetlands to be 45,180 square feet. (*See* Def's Ex A at 4.)

Powell testified that the only access from subject property to Hawthorne Street, a public roadway, is via Kettle Court SE and the City of Salem will not allow any additional access directly to Hawthorne. He testified that Kettle Court SE is a private roadway. (*See* Ptfs' Ex 1 at 21.) McLeod testified that Kettle Court SE was built in the mid-1990s by Plaintiffs as part of the sale to Kettle Foods. He testified that the agreement, including an access easement, maintenance agreement, and restrictive covenants (collectively, "agreement") was signed by Plaintiffs, the grantors, in December 1997. (Ptfs' Ex 3.) McLeod testified that it was executed with Cameron Healy, the founder of Kettle Chips; the parcel sold to Kettle Foods also lacks access from State or Hawthorne Streets without Kettle Court SE. (*See* Ptfs' Ex 3 at 16.)

McLeod testified that the agreement includes restrictions on the use of Kettle Court SE; for instance, no parking is allowed on the road. (*See* Ptfs' Ex 3 at 3.) He testified that the agreement states that the grantor has no responsibility for maintenance of Kettle Court SE; rather "[t]he costs and expenses for maintenance and repair of Access Easement shall be shared proportionately by grantees." (*Id.* at 4.) McLeod testified that the agreement restricts activities that would otherwise be allowed in the zone; for example, no activities that produce noxious odors are allowed. (*Id.*) He testified that the agreement has become more complicated to administer now that there are more property owners than Plaintiffs and Kettle Chips involved.

///

McLeod testified that, subsequent to the date the agreement was signed, KP Graphics and Wachovia each bought parcels of land requiring access to Kettle Court SE. McLeod testified that another private roadway was built to provide KP Graphics access to Kettle Court SE; it is not clear whether that roadway is subject to the agreement, but McLeod believes it is. He testified that the four property owners using Kettle Court SE held a series of negotiations to develop common ownership of the road and better define the maintenance agreement; each party was represented by counsel and spent quite a bit of money on the negotiations. McLeod testified that the parties reached an agreement, but Wachovia backed out at the last minute. He testified that the dispute will be costly to the buyer of the subject property.

The parties disagree with respect to the size of the roadway access easement. Powell and Harms testified that an unrecorded plat from the City of Salem shows the width of the easement to be 60 feet, although the recorded plat and the agreement report it as 40 feet. (*See* Ptfs' Ex 1 at 21; Ex 3.) Harms testified that he obtained the unrecorded plat from the city surveyor's website; the survey was performed March 20, 2008, and filed at the surveyor's office in 2009. (*See* Ptfs' Ex 13 at 4-5.) He testified that the unrecorded plat was a proposed plat signed by all owners and approved by the City of Salem; it was not recorded because one owner backed out at the last minute. Powell testified that the City of Salem reports that 60 feet is the typical road width for private industrial roadways, and a potential buyer would assume a road width of 60 feet. Harms testified that 27,433 square feet was selected because it is in between 24,224 square feet (based on the recorded plat) and 30,641 square feet (based on the proposed, unrecorded plat) and would likely be accepted by a buyer. (*See* Ptfs' Ex 1 at 26.) Rohlfing testified that he relied on the recorded access easement stating a width of 40 feet and determined that the portion of the subject property subject to the access easement is 14,580 square feet. (*See* Def's Ex A at 4.)

Powell and Harms testified that they determined the unusable area of the subject property to be 77,601 square feet with 364,961 suqare feet remaining as usable. (*See* Ptfs' Ex 1 at 5, 20, 26.) Rohlfing testified that he concluded the subject property usable area to be 382,910 square feet.

B.      *Market conditions*

Martin and Powell both testified that the industrial market was good in 2007 and began to slow in 2008; there was very little activity in the market as of January 1, 2010, primarily because financing was not available. (*See* Ptfs' Ex 1 at 38.) Powell testified that that situation persisted through the first quarter of 2010 and, as of January 1, 2010, the market had been "tanked" for over a year. He testified that, during that same period of time, businesses were failing and the vacancy rate was increasing as a result. Powell testified that the lack of transactional data from around the January 1, 2010, assessment date makes it difficult to determine the value of the subject property. Martin testified that there were approximately 1,700,000 square feet of vacant industrial space in Salem at the end of 2009. (*See* Ptfs' Ex 2 at 7.) He testified that the existence of numerous available industrial buildings hurts the market for vacant industrial land.

Powell testified that properties that use the private roadway Kettle Court SE are restricted to environmentally friendly businesses based on the agreement. (*See* Ptfs' Ex 3.) He testified that the restrictive covenants have the effect of narrowing the number of potential buyers and increasing the marketing time. Martin testified that the uncertainty regarding the wetlands and the agreement would be problematic for a developer who would want a wetlands delineation to provide a clear determination of the size of the wetlands and a clear resolution of the agreement.

/ / /

/ / /

C.     *Value evidence -- sales comparison approach*

Both Powell and Rohlfing determined a value for the subject property based on the sales comparison approach. Powell testified that his appraisal was as of November 11, 2009, but the value would not have changed much between November 11, 2009, and January 1, 2010; if anything, the value would have further decreased. (*See* Ptfs' Ex 1 at 2.) Powell identified five comparable sales and one comparable listing with unadjusted prices ranging from $2.93 to $9.51 per square foot. (Ptfs' Ex 1 at 42-47.) The sizes of Powell's comparables ranged from 48,787 to 955,271 square feet. (*Id.* at 47.) Powell's sales ranged from November 2007 to August 2009; listing 6 was recent as of the date of the appraisal. (*Id.*) Powell calculated a time adjustment of "1.00% per month * * * from mid-2007 to * * * November 11, 2009." (*Id.* at 43.) He concluded a 20 percent downward adjustment for the listing. (*Id.*) Powell determined adjusted prices ranging from $2.50 to $7.28 per square foot. (*Id.* at 43, 46.)

Powell testified that he considered sales 3, 4 and listing 6 as the most comparable to the subject property. Sale 3 was a January 2008 sale of 8.03 acres (350,658 square feet) in the Mill Creek Corporate Center (Mill Creek) for an adjusted price of $2.50 per square foot. (Ptfs' Ex 1 at 44, 47-48.) Powell testified that sale 3 was a developer purchase and the property was leased to FedEx Ground. (*See id.*) He testified that sale 3 is zoned IG/EC, which is an inferior zone to the subject property because the State of Oregon places additional employment requirements on the user. Powell testified that he considers sale 3 to be a low indicator of value of the subject property. Sale 4 was a November 2008 sale of 355,450 square feet for an adjusted price of $2.58 per square foot. (*Id.* at 44, 47.) Powell testified that sale 4's access and exposure are inferior to that of the subject property and it is located in the IBC zone, which is "slightly" superior to the subject property's zone. He testified that sale 4 is a low indicator of value for the subject

property. Listing 6 is a listing at $5.00 per square foot for 955,271 square feet; Powell determined an adjusted price of $4.00 per square foot. (*Id.* at 44, 47.) He testified that, as of January 1, 2010, listing 6 had not sold. Powell testified that the listing 6 is similar in location to the subject property; it has inferior access, superior exposure, and is larger than the subject property.

Powell testified that he determined a value of $3.75 per square foot for the subject property and made a downward adjustment of 10 percent because of the "cloud" on the access and maintenance agreement dispute; he concluded a value of $1,235,000.[3] (Ptfs' Ex 1 at 46.)

Rohlfing identified six comparable sales with unadjusted prices ranging from $4.00 to $6.03 per square foot. (Def's Ex A at 8, 12.) His sales occurred between May 2009, and October 2010. (*Id.* at 12.) Rohlfing's sales range in size from 0.14 acres (sale 4) to 4.62 acres (sale 5); he testified that sale 5 only includes two usable acres. (*Id.* at 12.) Four of the sales (2, 3, 5, and 6) are zoned Industrial Commercial (IC). (*Id.* at 8, 12.) Two of the sales are located in Hubbard, Oregon[4] (sales 2 and 4) and the other four are located in Salem. (*Id.*) Rohlfing testified that his best sales were 1, 2, and 6, which sold for $4.00, $4.25, and $4.25 per square foot, respectively. (*See id.*) He concluded a value of $4.25 per square foot for the subject property for a real market value of $1,627,000.[5]

Martin testified that it is important to consider zoning, size, access, and whether a parcel is "shovel ready." He testified that the subject property's zoning, IP, is more restrictive than the IC zone. Martin testified that IC is the most liberal industrial zone because it allows commercial,

---

[3] Powell's value conclusion before the 10 percent downward adjustment is $1,368,604. (Ptfs' Ex 1 at 46.)

[4] Rohlfing testified that Hubbard, Oregon is a 20 minute drive north of Salem. He testified that he considers it to be competitive with the Salem market for industrial land.

[5] Rohlfing revised his value determination at trial based on his revised conclusion of the usable area of the subject property.

office, and retail uses.[6]  He testified that, in the IP zone, no outside storage is allowed.  Both

Martin and Powell testified that IC zoned property is typically more valuable than IP zoned

property.  Martin testified that larger parcels typically sell for less per square foot than smaller

parcels.  He testified that he would consider parcels in the range of 6 to 15 acres comparable to

the subject property; he would not consider properties less than one acre in size as comparable to

the subject property.  Rohlfing agreed that price per square foot typically decreases as size

increases, but he did not make adjustments for size because he had no market data from which to

determine an appropriate adjustment.

D.      *Plaintiffs' additional value evidence and real market value request*

Plaintiffs consider Powell's appraisal concluding $3.75 per square foot to be on the high

end and request a value of $2.50 per square foot, or $912,000.  McLeod testified that he does not

think that the subject property would sell for more than $2.50 per square foot based on Martin's

testimony, the Mill Creek sale and listings, and the parties' stipulated 2010-11 real market value

of a smaller, 5.12-acre parcel located near the subject property.[7]

Martin testified that if he were to list the subject property, he would not list it at $3.75 per

square foot; he would suggest listing it at less than $3.00 per square foot.  He testified that, as of

the date of trial, Mill Creek included 511 acres of "shovel ready" land; even more "shovel ready"

land was available as of January 1, 2010.  Martin testified that, as of January 1, 2010, list prices

ranged from $2.30 to $2.75 per square foot for Mill Creek land.  Powell testified that Mill Creek

was cooperatively developed by the City of Salem and the State of Oregon with the goal of

---

[6] Plaintiffs provided both the IC and the IP zone codes for Salem as of October 2009.  (*See* Ptfs' Ex 8, 9.)

[7] McLeod testified concerning his experience with real estate: through his employment prior until July 2010, he bought properties all over the state of Oregon and is familiar with property valuation.  McLeod testified that he has been involved in the management of the subject property for the past 10 years and "took the lead" after the death of Frank Spears in November 2009.  He testified that the family owns several other properties, including a commercial building in Salem and one in Polk county

providing more jobs. He testified that the project aimed at attracting the best employers to the area. Powell testified that Mill Creek increased the supply of available land in Salem that is competitive with the subject property, but there was no corresponding increase in "effective demand." Rohlfing testified that Mill Creek includes certain employment requirements.

McLeod testified that the parties reached a stipulated agreement that the 2010-11 real market value of a small parcel of vacant land owned by Plaintiffs and located very close to the subject property was $550,000. (*See* Ptfs' Ex 11, 12.) He testified that the smaller parcel was about half the size of the subject property and, all things being equal, suggests a real market value of $1.1 million for the subject property. McLeod testified that the smaller parcel has superior access from State Street. Rohlfing testified that the small parcel is very different from the subject property; it is affected by a "floodway" and it is unclear whether that can be mitigated.

## II.    ANALYSIS

The issue before the court is the real market value of the subject property for the 2010-11 tax year. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor* (*Richardson*), TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1)[8], which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."

The assessment date for the 2010-11 tax year was January 1, 2010. ORS 308.007; ORS 308.210.

---

[8] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2009.

"Real market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]" ORS 308.205(2). There are three approaches of valuation that must be considered, although all three approaches may not be applicable: the cost approach, the sales comparison approach, and the income approach. OAR 150-308.205-(A)(2)(a); *Allen v. Dept of Rev.*, 17 OTR 48, 252 (2003). Both parties considered only the sales comparison approach. The sales comparison approach "may be used to value improved properties, vacant land, or land being considered as though vacant." *Chambers Management Corp v. Lane County Assessor,* TC-MD No 060354D, WL 1068455 at *3 (Apr 3, 2007) (citations omitted). The "court looks for arm's length sale transactions of property similar in size, quality, age and location" to the subject property. *Richardson* , WL 21263620 *3.

Plaintiffs have the burden of proof and must establish their case by a preponderance of the evidence. ORS 305.427. "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

A.      *Usable site area*

The parties agree that parts of the subject property are encumbered by wetlands and an access easement. The parties also agree that those parts of the subject property should not be included in the usable site area, but disagree with respect to the proper calculation of the usable site area. Powell and Harms presented persuasive evidence concerning their measurements of the wetlands and access easement. Defendant disagrees with reliance on the unrecorded plat of the subject property, which reports the width of the access easement as 60 feet rather than 40 feet. However, the court is persuaded that a potential buyer would consider the unrecorded plat and finds that Plaintiffs' calculation of 27,000 square feet, which splits the difference between

the recorded and unrecorded plats, to be persuasive. Thus, the court finds that the usable area of the subject property is 364,961suqare feet as determined by Powell and Harms.

B.       *Sales comparison approach and value evidence*

The court found Powell's comparable sales and listing to be the most reliable evidence of value, suggesting that the real market value of the subject property is in the range of $2.50 to $4.00 per square foot. Rohlfing's sales are considerably smaller than the subject property and he did not make size adjustments; thus, his value conclusion of $4.25 per square foot is likely overstated. Plaintiffs' requested value of $2.50 per square foot is based in large part on the Mill Creek sales and listings. The Mill Creek properties appear to be overall good comparables for the subject property; however, they are subject to restrictive zoning that includes employment requirements imposed by State of Oregon. Due to the additional employment requirements and restrictions, the Mill Creek properties are less desirable than the subject property, suggesting that a value of $2.50 per square foot is understated. The court finds that the real market value of the subject property was $3.50 per square foot, or $1,277,000, rounded, as of January 1, 2010.

Powell made a downward adjustment of 10 percent for the "cloud" that is a result of the ongoing dispute over the access and maintenance agreement. The court is persuaded that potential buyers would consider the lack of certainty concerning the access and maintenance agreement to be a drawback. However, as Powell testified, there is no objective way to measure the effect of the dispute on the real market value of the subject property and the court finds the estimate of 10 percent to be too speculative; a downward adjustment is not supported.

## III.      CONCLUSION

After carefully considering the testimony and evidence presented, the court finds that the 2010-11 real market value of the subject property was $1,277,000. Now, therefore,

IT IS THE DECISION OF THIS COURT that the 2010-11 real market value of property identified as Account R82426 was $1,277,000.

Dated this ___ day of July 2012.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Magistrate Allison R. Boomer on July 13, 2012. The Court filed and entered this Decision on July 13, 2012.*